James W. Vititoe, Esq. (csbn 75164)
   *jim@vititoe.com*
Stephen L. Rishoff, Esq. (csbn 62526)
   *steve@avaccidentattorneys.com*
Brittney M. Baca, Esq. (csbn 306987)
   *brittney@avaccidentattorneys.com*
**Vititoe Law Group**
5707 Corsa Avenue, 2nd Floor
Westlake Village, CA 91362
Telephone: 818-991-8900
Facsimile: 818-991-6200

Attorneys for plaintiffs, Wu Xun and Ma Qiandi.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Wu Xun and Ma Qiandi, individuals, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | |
| Daimler AG and Mercedes Benz, USA and Fletcher Jones Motor Cars, Inc., | **DEMAND FOR TRIAL BY JURY** |
| Defendants. | |

**INTRODUCTION**

1.     Plaintiffs, Wu Xun and Ma Qiandi, by and through their Counsel of Record and pursuant to the Federal Rules of Civil Procedure, file this Complaint for Damages against the above named Defendants.  This is a civil action arising out of serious, permanent, life scarring and post-crash personal injuries sustained by Plaintiff, Wu Xun, in Imperial County, California, on December 15, 2017, following a foreseeable automobile collision.  Plaintiff, Wu Xun, brings this automotive, products liability, and personal injury action against Defendants and/or their related subsidiaries or affiliates as further described herein, for his injuries sustained, including but not limited to pain, suffering, permanent disabilities and loss of enjoyment of life, loss of earnings and loss of earning capacity and for punitive damages.  Plaintiff, Ma Qiandi, wife of plaintiff, Wu Xun, brings this action for loss of care, comfort, society and affection arising out of the injuries suffered by her husband, Wu Xun.  This products liability action includes federal claims for general negligence, gross negligence, reckless conduct and breach of warranty, which arise out of the Defendant's faulty design, selection, inspection, testing, manufacture, assembly, equipping, marketing, distribution, and sale of an uncrashworthy, defective, and unreasonably dangerous vehicle.

2.     The vehicle at issue in this action is a 2017 Mercedes Benz GLE-Class vehicle, bearing Vehicle Identification Number 4JGDA5HB0HA982566, (herein the "Vehicle").

3.     Because of its faulty design, during normal and expected conditions the Vehicle's Electronic Stability Control system (herein "ESP") and Anti Lock Braking system (herein "ABS") along with other integrated electronic systems and software resident in the Vehicle, can, and did, fail to properly operate as intended, creating a condition whereby the wheels are individually braked by the ABS system, independent of driver brake pedal input, and as also controlled by the ESP and other systems, resulting in locked wheel skidding with no directional control, regardless of steering input.

1

**COMPLAINT FOR DAMAGES**

4.      On information and belief, prior to the manufacture and sale of the Vehicle, Mercedes Benz knew of the ABS and ESP system defects through sources such as customer complaints, pre-release evaluation and testing; arbitration actions; repair data; replacement part sales data; early consumer complaints made directly to Mercedes Benz, collected by the National Highway Transportation Safety Administration's Office of Defect Investigation ("NHTSA ODI"), and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from Mercedes Benz dealers; and other internal sources. Yet despite this knowledge, Mercedes Benz failed to disclose and actively concealed such defects from members of the public considering purchase of Mercedes Benz vehicles, such as Plaintiff, and continued to market and advertise the Vehicle as "sophisticated," "comfortable," and "state-of-the-art", which it was not.

5.      As a result of Mercedes Benz' alleged misconduct, Plaintiffs were harmed and suffered actual damages, more particularly set forth herein.

## PARTIES

6.      Plaintiff, Wu Xun, is a citizen of China, lawfully admitted for permanent residence in the United States and resides in the City of Irvine, County of Orange, California.  Plaintiff, Ma Qiandi is a citizen of China, lawfully admitted for permanent residence in the United States and resides in the City of Irvine, County of Orange, California.   Plaintiffs are husband and wife, lawfully married to one another.

7.      Defendant Mercedes-Benz USA (herein "MBUSA") is, on information and belief, a Delaware corporation with its principal place of business in Atlanta, Georgia. MBUSA is a wholly owned subsidiary of Daimler AG ("Daimler").  At all times relevant herein, MBUSA has been and has acted as an agent of Daimler and subject to Daimler's control.

8.      At all times relevant herein, MBUSA (itself and through its related entities) engaged in the business of marketing, warranting, distributing, selling, leasing, and

**COMPLAINT FOR DAMAGES**

servicing automobiles designed and manufactured by Daimler AG, including plaintiff's Vehicle, in California and throughout the United States.

9.     Defendant Daimler AG (herein "Daimler") is a foreign for-profit German corporation with its principal place of business in Stuttgart, Germany.  At all times relevant herein, Daimler (itself and through its related entities) engaged in the business of designing and manufacturing vehicles, including the subject Vehicle purchased by plaintiff.

10.     According to MBUSA, Daimler is solely responsible for designing its vehicles, including the subject 2017 GLE Vehicle purchased by plaintiff, therefore Daimler is an essential party to this action concerning design defects in the Vehicle.   Upon information and belief, Daimler has, and at all relevant times had, the contractual right to exercise, and in practice has exercised, control over MBUSA's work, including but not limited to the manner of marketing, the scope of written warranties and representations made and facts withheld from consumers and the public about defects in the systems of its vehicles.  Daimler has held MBUSA out as its agent for all purposes in the United States, but especially for sales and marketing of its vehicles and for ongoing management of relationships with purchasers of its vehicles.  Daimler established MBUSA as its wholly-owned subsidiary company and named MBUSA with its official "Mercedes-Benz" title.  It provides MBUSA with marketing and technical materials avoiding any distinction between MBUSA and Daimler, and instead representing MBUSA as nothing less than Daimler's presence in the United States for purposes of selling  "Mercedes-Benz" branded vehicles and providing related services.

11.     Defendant, Fletcher Jones Motor Cars, Inc. (herein "Fletcher Jones") is a California corporation with its principal place of business in the City of Newport Beach, Orange County, California.  At all times relevant herein, Defendant, Fletcher Jones (itself and through its related entities) engaged in the business of advertising, marketing, selling, leasing and servicing Mercedes Benz vehicles to the public, including selling the subject Vehicle to Plaintiffs.

**COMPLAINT FOR DAMAGES**

1

## JURISDICTION

2

12.     This Court has federal question jurisdiction over this action under 28 U.S.C.

3

§ 1331 because this case includes claims arising under federal law.

4

13.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C.

5

§1332(a)(1) because the amount in controversy exceeds $75,000, and plaintiff and other

6

defendants are citizens of different states.

7

14.     This Court has personal jurisdiction over MBUSA because MBUSA is

8

authorized to do business in this District, conducts substantial business in this District, and

9

some of the actions giving rise to this Complaint took place in this District.  Each of these

10

facts independently, but also all of these facts together, are sufficient to render the exercise

11

of jurisdiction by this Court over MBUSA permissible under traditional notions of fair play

12

and substantial justice.

13

15.     This Court has personal jurisdiction over Daimler because Daimler has

14

continuous and systematic general business contacts in this District.  By using MBUSA as

15

its channel for marketing, distributing, warranting, selling, and leasing  Daimler-designed

16

vehicles in this District and throughout the United States, Daimler itself has deliberately

17

taken affirmative steps to make Daimler-designed vehicles available to consumers in this

18

District and the rest of California, including plaintiff, created continuing obligations

19

between Daimler and residents of this District; and purposefully availed itself of the

20

benefits and protections of conducting business in this District and California generally.

21

16.     Daimler employees and representatives regularly visit Daimler subsidiaries

22

located in this District, thereby continuously conducting business in this District and

23

California generally. For example, Mercedes's North American research headquarters is in

24

California, and, in total, California is home to three of five of Mercedes's North American

25

research facilities.  Further, Daimler's wholly owned subsidiary and agent, MBUSA, has

26

substantial and consistent contacts in this District, as described above, and as Daimler's

27

agent, MBUSA's contacts in this District can be attributed to Daimler.  Finally, Plaintiffs'

28

**COMPLAINT FOR DAMAGES**

claims here arise out of Daimler's contacts with this District, particularly in that plaintiff could not even have purchased the Vehicle if not for Daimler's intentional acts of designing the vehicle (including their defective ESP, ABS and other systems) and exporting them for sale to customers in this District and the rest of California, including Plaintiff. These constitute sufficient bases to render the exercise of jurisdiction over Daimler by this Court permissible under traditional notions of fair play and substantial justice.

17.     This Court has personal jurisdiction over defendant, Fletcher Jones, because it has, at all times herein relevant, been engaged in marketing, warranting, distributing, selling, leasing, and servicing Mercedes vehicles designed and manufactured by Daimler, including sale of the subject Vehicle to plaintiff's vehicle in this District, and maintains its principal place of business in this District.

## VENUE

18.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants Daimler and MBUSA are deemed to reside in any judicial district in which it is subject to personal jurisdiction. Additionally, Daimler and MBUSA transact business within this District, and some of the events establishing the claims at issue here arose in this District.

19.     Venue is proper in this District because defendant, Fletcher Jones, has, at all times herein relevant, been engaged in marketing, warranting, distributing, selling, leasing, and servicing automobiles designed and manufactured by Daimler, including sale of the subject Vehicle to plaintiffs in this District, and maintains its principal place of business in this District.

20.     Venue is proper in this District because plaintiffs reside in this District and purchased the subject Vehicle from defendant, Fletcher Jones, in this District.

## FACTUAL ALLEGATIONS

21.     Plaintiff, Wu Xun, purchased the Vehicle as a new car from defendant, Fletcher Jones.   Plaintiff's Vehicle was designed, manufactured, distributed, advertised, marketed and warranted by defendants, MBUSA and Daimler, and bears the Vehicle

Identification No. 4JGDA5HB0HA982566.  Plaintiff purchased the Vehicle for his personal, family, and household use.   Plaintiff's Vehicle remained under warranty throughout the relevant period described herein.  Plaintiff regularly saw advertisements for Mercedes Benz vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before he purchased his Mercedes Benz GLE in 2017.   Although he does not recall the specifics of the many Mercedes Benz advertisements he saw before he purchased the Vehicle, he does recall that state-of-the-art engineering was a frequent theme across the advertisements he saw.  Those advertisements about state-of-the-art engineering influenced his decision to purchase the Vehicle.  Had those advertisements or any other Mercedes Benz materials disclosed to Plaintiff that the Vehicle had defective ABS, ESP and other vehicle control systems and software, he would not have purchased the Vehicle.

22.    Plaintiffs are informed and believe that, because of the  defective ABS, ESP and other vehicle control systems and software resident in the Vehicle, it was predisposed to unintended, non-uniform braking and skidding, directed by the ABS and/or ESP systems, acting alone, or in concert with other systems and software resident in the Vehicle, resulting in total loss of directional and braking control by the driver and an inability of the driver to control the Vehicle.   Unresponsiveness of brake pedal and steering wheel inputs attempted by the driver result from overriding control exercised by these ESP, ABS and other systems and software in the exercise or normally expected turning movements initiated by the driver.

23.    Defendants, and each of them, advertise, tout and promote their ESP and ABS systems as state-of-the-art safety systems.  In their literature, Defendants describe the ESP system as follows:

> "ESP® monitors driving stability and traction, i.e.
> power transmission between the tires and the
> road surface.  If ESP® detects that the vehicle is

> *deviating from the direction desired by the driver,*
> *one or more wheels are braked to stabilize the*
> *vehicle. The engine output is also modified to keep*
> *the vehicle on the desired course within physical*
> *limits. ESP® assists the driver when pulling away*
> *on wet or slippery roads. ESP® can also stabilize*
> *the vehicle during braking."*

Defendants further advertise and promote the ABS systems in their Mercedes Benz vehicles as follows:

> *"ABS regulates brake pressure in such a way that*
> *the wheels do not lock when you brake. This allows*
> *you to continue steering the vehicle when braking.*
> *ABS works from a speed of about 5 mph (8 km/h),*
> *regardless of road-surface conditions. ABS works on*
> *slippery surfaces, even when you only brake gently."*

Even though Mercedes Benz advertises, promotes and represents its ABS system as operating even when gentle brake inputs are made, it states in other materials that when braking is initiated, involuntarily by the ESP and or ABS systems themselves, the braking systems may be totally destroyed:

> *"Application of the brakes by ESP® may otherwise*
> *destroy the brake system"*

24.    The International Standards Organization ("ISO") has promulgated certain safety standards, particularly Section 26262, titled "Road vehicles – Functional safety" which is an international standard for functional safety of electrical and/or electronic systems in production automobiles defined by the International Organization for Standardization (ISO) in 2011. Section 26262 is intended to be applied to electrical and/or

**COMPLAINT FOR DAMAGES**

electronic systems installed in "series production passenger cars" with a maximum gross weight of 3500 kg.  It aims to address possible hazards caused by the malfunctioning behavior of electronic and electrical systems.  On information and belief, the ESP, ABS, and other systems and software resident in the subject Vehicle, taken together as an integrated system, fail to meet the functional safety standards of ISO 26262.

25.    Defendants knew or should have known that the defectively designed ESP, ABS, and other systems and software resident in the subject Mercedes Benz Vehicle could result in, or at least exacerbate, normally-expected driver reactions, and braking and steering inputs being involuntarily modified or overridden, or even totally ignored, resulting in a complete loss of control of the vehicle, likely to result in a crash.  These systems and software present a serious risk to the health and safety of the vehicle occupants.

26.    On information and belief, Defendants, and each of them, learned of the defects in the Mercedes Benz ESP, ABS, and other systems and software well before Plaintiff purchased the subject Vehicle through sources such as pre-release evaluation and testing; arbitration actions; repair data; replacement part sales data; early consumer complaints made directly to Mercedes Benz, collected by NHTSA ODI, and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from Mercedes Benz dealers; as well as through other internal sources unavailable to Plaintiffs prior to discovery.

27.    On information and belief, during the pre-release process of designing, manufacturing, engineering, and testing the GLE Class vehicles,   Mercedes Benz necessarily would have gained comprehensive and exclusive knowledge about the GLE Class vehicles propensity and susceptibility to total control loss by reason of aggressive, over-reactive activation of the vehicle's ESP, ABS, and other systems and software when normally-expected turning movements are applied to the vehicle by the driver in ordinary operation.   An adequate pre-release analysis of the design, engineering, and manufacture of these systems and software  would have revealed to Mercedes Benz that the systems and

**COMPLAINT FOR DAMAGES**

software were defective and dangerous and likely to result in otherwise avoidable loss of control crashes.

28.     Complete data on such designing, manufacturing, engineering, and testing of the ESP, ABS and other systems and software is exclusively within the control of Defendants and unavailable to Plaintiffs without discovery.  Such materials may include field reports, customer complaints and warranty data, as automakers such as Mercedes Benz should (and do) monitor NHTSA databases for consumer complaints regarding their vehicles as part of the automakers' ongoing obligation to identify potential defects in their vehicles, including design related defects.  On information and belief, Mercedes Benz had contemporaneous and on-going access to the NHTSA consumer complaint data and that information cannot be obtained by Plaintiffs without discovery.

29.     Upon information and belief, Mercedes Benz knowingly designed, manufactured, and sold the GLE Class Vehicles with the ESP, ABS and other system and software defects with knowledge of the sub-standard and potentially dangerous performance of those systems and software in those GLE Class vehicles, including the one sold to Plaintiff.

30.     Mercedes Benz directly markets the GLE Class vehicles to consumers via extensive nationwide, multimedia advertising campaigns on television, the Internet, billboards, print publications, mailings, and through other mass media, describing its vehicles therein as "state-of-the-art," "luxury," "fine craftsmanship," and "the most advanced vehicles on the road." Mercedes Benz slogan for its vehicles is "the best or nothing."  Mercedes Benz marketing materials advertised its vehicles as "engineering excellence" and "an automotive masterpiece."

31.     In practice, however, the Mercedes Benz GLE Class Vehicles are not as safe as Mercedes Benz marketing suggests.  Mercedes concealed the fact that the so-called "Luxury" Class Vehicles, which supposedly are "the most advanced vehicles on the road," are instead not even safe under ordinary conditions because the ESP, ABS and other

**COMPLAINT FOR DAMAGES**

systems and software are likely to result in otherwise avoidable loss of control crashes. Plaintiffs were exposed to Defendant's long term, national, multimedia marketing campaign touting the supposed sophistication and engineering excellence of the GLE Class vehicles and made their decision to purchase or lease their Class Vehicles based on Mercedes's misleading marketing that concealed the true, defective nature of the GLE Class vehicles.  To the extent that Plaintiffs' claims arise from Defendant's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiffs base their claims.  Plaintiffs allege that at all relevant times, including specifically at the time they purchased the subject Vehicle, Defendants knew, or were reckless in not knowing, of the ESP, ABS and other system and software defects. Defendants were under a duty to disclose the defects based upon their exclusive knowledge of it, and their concealment of it, and Defendants never disclosed the defects to Plaintiffs at any time or place or in any manner.

32.    Plaintiffs make the following specific fraud allegations with as much specificity as possible absent access to information necessarily available only to the Mercedes Benz defendants.  On information and belief, Mercedes Benz actively concealed the ESP, ABS and other system and software defects from the public and Plaintiffs while simultaneously touting the safety, comfort, sophistication, and world-class quality of the GLE Class vehicles.  Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Mercedes Benz responsible for such decisions.  Mercedes Benz knew, or was reckless or negligent in not knowing, that the GLE Class vehicles contained the ESP and ABS system and software defects and concealed their knowledge of the defects and made representations about the state-of-the-art safety, comfort, sophistication, world-class quality, and other attributes of the GLE Class vehicles. Mercedes Benz has never taken any action to inform consumers about the true nature of the ESP, ABS and other system and software defects in the GLE Class vehicles.  Plaintiffs are aware of no document, communication, or other thing, in which Mercedes Benz

**COMPLAINT FOR DAMAGES**

disclosed the truth about the said defects in the GLE Class vehicles to anyone outside of Mercedes Benz.  Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Mercedes Benz' website. Mercedes Benz actively concealed material information about the Defect in the Class Vehicles for the purpose of inducing persons such as Plaintiffs to purchase and/or lease GLE Class vehicles, rather than purchasing or leasing competitors' vehicles and made representations about the world-class quality, sophistication and state-of-the-art safety of the GLE Class Vehicles. Had Mercedes Benz disclosed the truth, for example in its advertisements or other materials or communications, Plaintiffs would have been aware of it, and would not have bought the GLE Class vehicles through Defendant, Fletcher Jones.

## THE INCIDENT

33.    On December 15, 2017, Wu Xun was properly operating his 2017 Mercedes Benz GLE Class Vehicle along and upon Evan Hewes Highway in the El Centro area of Imperial County, California.  At approximately 2:30 p.m, while driving the Vehicle in clear weather upon the dry asphalt roadway, a rabbit suddenly came onto the roadway in front of him.  Plaintiff, Wu Xun, braked and turned the Vehicle's steering wheel to the left to avoid hitting the animal.  When he successfully passed by the animal, he attempted to turn the steering wheel back to the right to resume the roadway, whereupon the Vehicle failed to respond, and instead continued to the left with accompanying braking and locked wheel skidding occurring, without any driver input to the brake pedal.  As a result, the Vehicle went off the road, striking a tree, thereby causing injuries and damages to Plaintiff.  Plaintiff was taken from the accident scene by ambulance and was unable to provide much information to investigating California Highway Patrol officers due to his inability to speak English well.  He is a native Mandarin speaker.

34.    Plaintiff had been driving within the posted speed limit when he became involved in this foreseeable turn-to-avoid maneuver that forms the basis of this Complaint. Upon information and belief, at the time of this Incident, the Vehicle and its component

sub-assemblies at issue in this action were in the same essential condition as they were at the time that they left the Defendant's control.

35.    As stated, Plaintiff, Wu Xun, required hospitalization for treatment of his injuries and continues to undergo follow-up medical care and therapy for his injuries. Accordingly, as a result of the defective and unreasonably dangerous condition of the Vehicle at the time of the subject incident, on December 15, 2017, Plaintiff, Wu Xun, has suffered severe and permanent injuries, for which he now brings suit.

## AGGRAVATING CIRCUMSTANCES

36.    Electronic stability programs and anti lock braking systems are critical component in the safety features of virtually every motor vehicle sold in the United States and throughout the world. Currently, over 30,000 people are killed in motor vehicle accidents each year in the United States. Remarkably, that number is nearly half of what it was in 1966, when over 50,000 Americans died in car crashes. The drastic reduction is, in large part, due to tremendous advances in vehicle occupant safety, including the widespread inclusion of ESP and ABS systems and accompanying software in vehicles. Accelerometers and other sensors in the vehicle trigger the vehicle's ESP and ABS systems when abnormal vehicle movements or control inputs are sensed.  Because the ESP and ABS systems must deploy timely and with appropriate and reasonable forces to be effective, but not subject the occupants to additional unnecessary harm.   When people operate a motor vehicle or ride in one as a passenger, they trust and rely on the manufacturers of those motor vehicles to make those vehicles safe.

37.    The subject Vehicle contained components, systems and software (including without limitation ESP and ABS) manufactured or sourced by Defendant, Daimler, that, instead of protecting vehicle occupants from bodily injury during accidents, cause loss of control, and in many incidents resulting in vehicle crashes.

38.    On information and belief, Defendant, Daimler, knew of the defects in the ESP, ABS and other systems and software for many years but did nothing to remedy the

**COMPLAINT FOR DAMAGES**

said defectively designed systems and software to prevent ongoing injury.  Defendant, Daimler, did not issue a recall, adequately investigate it themselves, or seek the involvement of federal safety regulators.  Instead, it was concealed, and Defendants, Daimler and MBUSA  kept putting the defective systems and software in its vehicles, including the subject GLE Class Vehicle, while marketing them as highly safe and of high quality.

39.    Further, prior to designing, selecting, inspecting, testing, manufacturing, assembling, equipping, marketing, distributing, and/or selling the Vehicle, Defendants, Daimler and MBUSA, knew that alternative system and software designs for the ESP and ABS systems could be developed and produced that would be safer, more practical and would be both technologically and economically feasible for inclusion in Mercedes Benz vehicles, including their GLE Class vehicles such as the subject Vehicle.  Such an alternative design would have eliminated the defective and unsafe characteristics of the Vehicle without impairing its usefulness or making it too expensive, yet they failed to make such necessary changes to make their Mercedes Benz vehicles safe, letting profits take a back seat to safety for this automobile manufacturer in making its product development and sourcing decisions.  Defendant, Daimler, apparently put profits ahead of safety, cutting corners to avoid redesigning its ESP, ABS and other vehicle control and stability control systems and software.

40.    In sum, certainly well before Plaintiff purchased the subject Vehicle, Defendant, Daimler, was aware of the ESP and ABS systems and software defects, and upon information and belief, knowingly designed, manufactured, and sold the GLE Class Vehicles with the ESP, and ABS system and software defects, while willfully concealing the true inferior quality and sub-standard performance of its vehicles, including its GLE Class vehicles including the subject Vehicle purchased by Plaintiff.

41.    Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Daimler

**COMPLAINT FOR DAMAGES**

responsible for continuing inclusion of the defective ESP and ABS systems and software in its GLE Class vehicles including the Vehicle purchased by Plaintiffs.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

(Negligence, Gross Negligence, Willful and Wanton Conduct:

Design Defect as to Defendants, Daimler AG and Mercedes Benz USA)

42.    Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

43.    At all times relevant herein, Defendants, Daimler and MBUSA, designed, selected, inspected, tested, assembled, equipped, marketed, distributed, and sold the Vehicle and its components, including but not limited to, equipping it with its ESP and ABS systems and software.

44.    At all times relevant herein, Defendants, Daimler and MBUSA, owed Plaintiffs a duty of reasonable care to design, select, inspect, test, assemble, equip, market, distribute, and sell the Vehicle and its components, including the ESP and ABS systems and software so that it would provide a reasonable degree of occupant protection and safety during foreseeable collisions occurring in the real world highway environment of its expected use.

45.    At all times relevant herein, as designed, selected, inspected, tested, assembled, equipped, marketed, distributed, and sold by Defendants Daimler and MBUSA, the Vehicle is and was uncrashworthy, defective, unreasonably dangerous, and unsafe for foreseeable users and occupants because its ESP and ABS systems and software is and was inadequately designed and constructed, and failed to provide the degree of occupant protection, and safety a reasonable consumer would expect in foreseeable accidents occurring in the real world environment of its expected use.

46.    At all times relevant herein, Defendants, Daimler and MBUSA, each were collectively and respectively negligent, grossly negligent, willful, wanton, reckless and

careless in the design of the subject Vehicle and breached their duties of care owed to Plaintiff by failing to design, manufacture, test, assemble and/or install the Vehicle's ESP and ABS systems and software so as to prevent the Vehicle from having tendencies and propensities to take control of the Vehicle away from the driver and brake and control the Vehicle independent of driver input during normally expected driving maneuvers, thereby making the Vehicle uncrashworthy. Defendants, Daimler and MBUSA, further failed to exercise reasonable care in the design of the subject Vehicle's ESP and ABS systems and software and failed to exercise reasonable care in the testing of the subject Vehicle and its ESP and ABS systems and software, and failed to exercise reasonable care in the inspection of the subject Vehicle and its ESP and ABS systems and software and failed to adopt and implement adequate warnings or placards regarding the subject Vehicle and its tendencies and propensities to take control of the Vehicle away from the driver and brake and control the Vehicle independent of driver input during normally expected driving maneuvers, and failed to incorporate appropriate quality assurance procedures in design of the subject Vehicle and its ESP and ABS systems and software and on such other and further particulars as the evidence may show.

47. At all times relevant, as a direct and proximate result of Defendants, Daimler and MBUSA's negligence, and the breaches complained of herein, Plaintiffs have suffered serious and permanent injuries including excruciating pain and suffering, mental anguish, and emotional distress from the accident of December 15, 2017.

48. Plaintiffs demand judgment against Defendants, and each of them, jointly and severally, for all actual and compensatory damages they suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, for all costs of this action, and for any other such further relief as this Honorable Court and/or jury may deem just and proper.

///

///

15

**COMPLAINT FOR DAMAGES**

## SECOND CLAIM FOR RELIEF

(Negligence, Gross Negligence, Willful and Wanton Conduct:

Manufacturing Defect As to Defendants, Daimler and MBUSA)

49.   Plaintiffs adopt and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

50.   At all times relevant herein, Defendants, Daimler and MBUSA, designed, selected, inspected, tested, assembled, equipped, marketed, distributed, and sold the Vehicle and its components, including but not limited to, equipping it with its ESP and ABS systems and software.

51.   At all times relevant herein, Defendants, Daimler and MBUSA, owed Plaintiffs a duty of reasonable care to design, select, inspect, test, assemble, equip, market, distribute, and sell the Vehicle and its components, including the ESP and ABS systems and software so that it would provide a reasonable degree of occupant protection and safety during foreseeable collisions occurring in the real world highway environment of its expected use.

52.   At all times relevant herein, as designed, selected, inspected, tested, assembled, equipped, marketed, distributed, and sold by Defendants Daimler and MBUSA, the Vehicle is and was uncrashworthy, defective, unreasonably dangerous, and unsafe for foreseeable users and occupants because its ESP and ABS systems and software is and was inadequately designed and constructed, and failed to provide the degree of occupant protection, and safety a reasonable consumer would expect in foreseeable accidents occurring in the real world environment of its expected use.

53.   At all times relevant herein, Defendants, Daimler and MBUSA, each were collectively and respectively negligent, grossly negligent, willful, wanton, reckless and careless in the design of the subject Vehicle and breached their duties of care owed to Plaintiff by failing to design, manufacture, test, assemble and/or install the Vehicle's ESP and ABS systems and software so as to prevent the Vehicle from having tendencies and

propensities to take control of the Vehicle away from the driver and brake and control the Vehicle independent of driver input during normally expected driving maneuvers, thereby making the Vehicle uncrashworthy.  Defendants, Daimler and MBUSA, further failed to exercise reasonable care in the design of the subject Vehicle's ESP and ABS systems and software and failed to exercise reasonable care in the testing of the subject Vehicle and its ESP and ABS systems and software, and failed to exercise reasonable care in the inspection of the subject Vehicle and its ESP and ABS systems and software and failed to adopt and implement adequate warnings or placards regarding subject Vehicle and its tendencies and propensities to take control of the Vehicle away from the driver and brake and control the Vehicle independent of driver input during normally expected driving maneuvers, and failed to incorporate appropriate quality assurance procedures in design of the of the subject Vehicle and its ESP and ABS systems and software and on such other and further particulars as the evidence may show.

54.     At all times relevant, as a direct and proximate result of Defendants, Daimler and MBUSA's negligence, and the breaches complained of herein, Plaintiffs have suffered serious and permanent injuries including excruciating pain and suffering, mental anguish, and emotional distress from the accident of December 15, 2017.

55.     Plaintiffs demand judgment against Defendants, and each of them, jointly and severally, for all actual and compensatory damages they suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, for all costs of this action, and for any other such further relief as this Honorable Court and/or jury may deem just and proper.

///

///

///

///

///

**COMPLAINT FOR DAMAGES**

## THIRD CLAIM FOR RELIEF

(Strict Liability in Tort As to All Defendants)

56.     Plaintiffs adopt and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

57.     At all times relevant herein, Defendants, and each of them, are strictly liable for designing, testing, manufacturing, distributing, selling, and/or placing a defective and unreasonably dangerous Vehicle into the stream of commerce.

58.     At all times relevant herein, the subject Vehicle and its ESP and ABS systems and software were defective and unreasonably dangerous as to its design, manufacture, distribution and warnings, causing the Vehicle to be in a defective condition that made it unreasonably dangerous for its intended use.

59.     At all times relevant herein, Defendants, and each of them. all took some part in the manufacture and sale of the subject Vehicle and its ESP and ABS systems and software to Plaintiffs at some point prior to the Incident on December 15, 2017.

60.     At all times relevant, the subject Vehicle was being used in an intended and/or foreseeable manner when the Incident alleged herein occurred.  Plaintiff neither misused nor materially altered the subject Vehicle, and upon information and belief, the subject Vehicle was in the same or substantially similar condition that it was in at the time of purchase.

61.     At all times relevant herein, the subject Vehicle is and was unreasonably dangerous and defective because it was designed, manufactured, equipped and sold with dangerous ESP and ABS systems and software which, in foreseeable collisions, including during the Incident on December 15, 2017, could and did result in serious injuries to the Vehicle occupants.

62.     On information and belief, at all times relevant herein, Defendants Daimler and MBUSA, were aware of feasible alternative designs which would have minimized or

**COMPLAINT FOR DAMAGES**

eliminated altogether the risk of injury posed by the Vehicle and its ESP and ABS systems and software.

63.     At all times relevant herein, Defendants, and each of them, had a duty to warn users of the dangers associated with the Vehicle and its ESP and ABS systems and software.

64.     At all times relevant herein, Defendants, and each of them, failed to warn of the inherent and latent defects that made this product dangerous and unsafe for its intended use.

65.     At all times relevant herein, Defendants, and each of them, failed to design, test, manufacture, inspect, and/or sell a product that was safe for its intended use.

66.     As a direct and proximate result of the Defendants, and each of them's negligence, failures, omissions, and breaches complained of herein, Plaintiffs have incurred serious and permanent injuries including excruciating pain and suffering, mental anguish, and emotional distress from the Incident on December 15, 2017.

67.     Plaintiffs demand judgment against Defendants, and each of them, jointly and severally, for all actual and compensatory damages they suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, for all costs of this action, and for any other such further relief as this Honorable Court and/or jury may deem just and proper.

## FORTH CLAIM FOR RELIEF

### (Failure to Warn As to All Defendants)

68.     Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

69.     At all times relevant herein, Defendants, Daimler and MBUSA, as manufacturers of subject Vehicle and ESP and ABS systems and software, owed duties to warn of foreseeable dangerous conditions of the subject Vehicle which would impair its safety.

**COMPLAINT FOR DAMAGES**

70.     At all times relevant herein, Defendants, and each of them, knew or should have known that the subject Vehicle had a tendency and propensity to take control of the Vehicle away from the driver and brake and control the Vehicle independent of driver input during normally expected driving maneuvers, that could injure or kill occupants.

71.     At all times relevant herein, Defendants, and each of them, would have had and had no reason to believe that users, such as and including Plaintiffs, would realize this potential danger.

72.     At all times relevant herein, Defendants, and each of them, affirmatively failed to exercise reasonable care to inform users, such as and including Plaintiffs, of the Vehicle's dangerous condition created by the Vehicle's tendency and propensity to take control of the Vehicle away from the driver and brake and control the Vehicle independent of driver input during normally expected driving maneuvers

73.     As a direct and proximate result of Defendants, and each of them's failure to warn of the dangers posed by the Vehicles dangerous tendencies and propensities as described herein, Plaintiffs suffered injuries including, but not limited to, excruciating pain and suffering, mental anguish, and emotional distress, from the accident on December15, 2017.

74.     By reason of the foregoing, Plaintiffs are entitled to recover for all general and special damages they sustained as a direct and proximate result of Defendants, and each of them's negligent and grossly negligent acts or omissions.

75.     Plaintiffs demand judgment against Defendants, and each of them, jointly and severally, for all actual and compensatory damages they suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, for all costs of this action, and for any other such further relief as this Honorable Court and/or jury may deem just and proper.

///

///

**COMPLAINT FOR DAMAGES**

# FIFTH CLAIM FOR RELIEF

(Breach of Express Warranty – Magnuson-Moss Warranty Act)

76.     Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

77.     The Class Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1).  Plaintiffs are "consumers" as defined in 15 U.S.C. § 2301(3).  Defendants, and each of them, are a "supplier" and "warrantor" as defined in 15 U.S.C. §§ 2301(4) and (5).

78.     78.     Defendants, and each of them, provided Plaintiffs with "written warranties" within the meaning of 15 U.S.C. § 2301(6).

79.     Defendants, and each of them, have breached their express warranties by refusing to remedy, retrofit, replace or repair, free of charge, the defective Vehicle ESP and ABS systems and software.

80.     At the time the GLE Class Vehicle was sold, Defendants, and each of them, knew that they possessed the defective ESP and ABS systems and software, and offered an express warranty with no intention of honoring said warranty with respect to these known defects.

81.     Additionally, pursuant to 15 U.S.C. § 2304(d)(1), "the warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted product . . . [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor."

82.     At no time have Defendants, or any of them, offered a permanent or adequate repair, remedy, retrofit or replacement of the defective ESP and ABS systems or software that would permanently prevent the Vehicle's dangerous  tendency and propensity to take control of the Vehicle away from the driver and brake and control the Vehicle independent

of driver input during normally expected driving maneuvers.  Defendants, and each of them's, refusal to provide a permanent repair, remedy, retrofit or replacement violates 15 U.S.C. § 2304(d)(1).

83.     As a direct and proximate result of Defendants, and each of them's conduct, Plaintiffs suffered injuries including, but not limited to, excruciating pain and suffering, mental anguish, and emotional distress, from the accident on December 15, 2017.

84.     By reason of the foregoing, Plaintiffs are entitled to recover for all general and special damages they sustained as a direct and proximate result of Defendants, and each of them's, conduct.

85.     Plaintiffs demand judgment against Defendants, and each of them, jointly and severally, for all actual and compensatory damages they suffered, together with interest, if applicable, for all costs of this action, and for any other such further relief as this Honorable Court and/or jury may deem just and proper.

## DEMAND FOR JURY TRIAL

86.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays as follows:

1.     For a trial by jury and judgment against Defendants, Daimler AG, MBUSA and Fletcher Jones.

2.     For compensatory damages to be determined at trial to compensate Plaintiffs for medical and other actual expenses;

3.     For an award of damages to be determined at trial to compensate Plaintiffs for all non-monetary and compensatory harm, including, but not limited to, for their physical injuries, pain and suffering, humiliation, embarrassment, stress and anxiety, loss of self esteem and self-confidence, emotional pain and suffering and loss of earnings and loss of earning capacity.

**COMPLAINT FOR DAMAGES**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4.     For exemplary and punitive damages against Defendants, Daimler, MBUSA and Fletcher Jones, in an amount as a jury may determine to halt such conduct;

5.     For the costs of this suit, including attorney's fees; and

6.     For such other and further relief to which they may be entitled and as this Honorable Court may deem just and proper.

DATE: December 12, 2019                    **VITITOE LAW GROUP**

/s/ *Stephen L. Rishoff*

Stephen L. Rishoff, Esq.
Attorneys for Plaintiffs

23

**COMPLAINT FOR DAMAGES**